UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CR169RWS(MLM) |
| ) | |
| MAURICE HOBSON, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the Pretrial Motion filed by defendant. An Evidentiary Hearing was held on 10/6/05. This case is set for trial on **November 7, 2005** at **9:00 A.M.** before the Honorable Rodney W. Sippel.

Defendant is charged by Indictment with knowingly possessing a sawed off shotgun that was not registered in the National Firearms Registration and Transfer Record. The initial issue in the government's Response [Doc. 17] to defendant's Motion is the matter of defendant's standing to challenger the seizure of the shotgun. At the hearing this issue was raised prior to the taking of evidence on the facts surrounding the seizure of the weapon. Counsel for defendant indicated he had a witness who would testify about matters related to defendant's standing. The government elected to call this witness.

Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

**FINDING OF FACT**

Kiana Shelton testified that she is the defendant's girlfriend. She is employed by the City of St. Louis in the Parking Enforcement Department. She was aware defendant had been arrested on 12/15/04 on a firearms charge after the police recovered a gun from a 1993 Pontiac Bonneville. Ms. Shelton said she purchased this vehicle with cash but it was titled in her mother's name for

insurance purposes. Ms. Shelton testified she has previously had some accidents making insurance too expensive so therefore they put the car in her mother's name.

She had permission from the owner of a vacant building in the 1800 block of Cora Street to park her Bonneville in the driveway. On 12/15/04 the car was parked in this driveway because it had a flat tire and "major issues" with the car. It was last driven approximately 2-3 weeks prior to 12/15/04.

Ms. Shelton testified her mother did not have keys to the Bonneville. Only she and defendant had keys. She testified unequivocally that defendant had permission to access and drive her car. Prior to 12/15/04 defendant was stopped by police for a robbery while driving the car. Defendant told Ms. Shelton he was stopped for speeding. On 12/15/04 defendant was supposed to fix the flat and check whatever else was wrong with the car. Ms. Shelton was examined at length about what defendant told her about the incident. His version of the events as told to her is not consistent with that of the police report or the testimony of the arresting officer. Defendant told her he arrived in his friend's Jeep and got ready to fix the flat. There was no jack in the trunk so he entered the car. Police pulled up on him and arrested him saying they saw him get out of the Jeep with a gun. On the issue of defendant's statement, Ms. Shelton testified that defendant told her that the police pressured him into making a written statement by telling him if he did not, they would arrest her (Ms. Shelton) and her mother. Defendant did not say the statement was not true.

Matthew Mayer has been a police officer with the St. Louis Metropolitan Police Department for approximately eight years. He is assigned to the Eighth District. On 12/15/04 at approximately 4:00 PM or so, he was in the area of the 1800 block of Cora on an unrelated narcotics surveillance. He was in uniform but in an unmarked car with Sergeant Michael Marks. While parked during surveillance, they observed a dark colored Jeep Cherokee pull up to a vacant building on Cora. The passenger exited the Jeep. PO Mayer identified defendant as the passenger. Defendant went to the rear of the Jeep and looked about. This caught the officers' attention because he appeared to be

checking to see if anyone was watching him. Defendant went to the rear passenger door of the Bonneville, reached inside his coat and removed a sawed off shotgun or rifle and put it inside the Bonneville. Both PO Mayer and Sgt. Marks were using binoculars. The officers notified an assist car to respond and pulled their vehicle to the location of the Jeep. Defendant looked at the officers, recognized that they were police and closed the rear passenger door. He said "What's up, officers?" as he walked towards them. Sgt. Marks approached defendant and PO Mayer went to the Bonneville. PO Mayer saw the barrel of a shotgun or rifle clearly visible sticking out from the rear center armrest trunk access panel in the middle area of the rear seat. The door was unlocked and PO Mayer seized the weapon and unloaded it. He walked over to defendant and placed him under arrest for UUW/CCW.[1] PO Mayer advised defendant of his <u>Miranda</u> Rights by reading from the department issued card. The St. Louis Metropolitan Police Department Card states the following:

Warnings – Constitutional Rights

1. You have the right to remain silent.

2. Anything you say can and will be used against you in court.

3. You have the right to a lawyer and to have him with you while you are being questioned.

4. If you cannot afford to hire a lawyer, one will be appointed for you before any questioning if you so desire.

Defendant said he understood his rights and made statements at the scene about the gun.

Defendant was transported to the police station. At the police station defendant's coat was seized as evidence to show it was capable of concealing a firearm.

Defendant was given an opportunity to write his statement. He was presented with the department Warning and Waiver Form. Gov.Ex.A.

---

[1] It is a criminal offense in Missouri to carry a concealed weapon. Unlawful Use of a Weapon/Carrying a Concealed Weapon is referred to as "UUW/CCW". Prior to defendant's removing the gun from under his coat, the gun was fully concealed. R.S.Mo. § 571.030.

The form reads as follows:

> I have been informed by [Sgt. Marks] of the St. Louis Metropolitan Police Department that he/she wants to question me about [UUW Possession of Illegal Firearm] of which I am accused or suspected. He/she has also informed me of my rights.
>
> I understand that I have the right to remain silent and that any statement I make may be used as evidence against me in a criminal trial.
>
> I understand that I have the right to consult with counsel and that I have the right to have counsel present with me during questioning. I may retain counsel at my own expense or counsel will be appointed for me at no expense to me.
>
> I understand that even if I consent to being questioned now without counsel present, I may stop answering questions at any time. Also, I may request counsel at any time during questioning.
>
> I have read and understand all these rights. I voluntarily waive the rights and desire to make a statement.

Sgt. Marks read the form to defendant and defendant initialed each right indicating he understood. Defendant signed this portion of the form. Defendant then made a written statement in his own handwriting. After the arrested person's statement, the form goes on to say:

> I [Maurice Hobson], have read or have had read to me this statement which begins on page [1] and ends on page [2]. I fully understand the contents of this entire statement made by me. The statement is true. I have initialed all corrections and have signed the bottom of each page containing the statement. **I have made this statement freely without hope of reward or benefit, without threat of punishment, and without coercion, unlawful influence or unlawful inducement.** (Emphasis added)

Defendant again signed the form as did Sgt. Marks, PO Mayer and another police officer.

Defendant did not appear drunk or on drugs. He was very courteous. He followed directions. No threats were made to coerce him to make the statement nor were any promises made to induce him to do so. PO Mayer was present when Ms. Shelton testified. He heard her say defendant told her that the police pressured defendant by threatening to arrest her and her mother because it was her car. PO Mayer specifically denied making such a threat and stated he could not have arrested Ms. Shelton or her mother anyway because they were not there. He did not learn of

defendant's robbery arrest until after he ran his record. He did not know whether defendant had a lawyer on the robbery arrest. At no time did defendant ask to speak to a lawyer.

## CONCLUSIONS OF LAW

**1. Standing**

As pointed out in <u>United States v. Sanchez</u>, 943 F.2d 110, 113 n.1 (1st Cir. 1991), the use of the word "standing" is convenient but somewhat imprecise. The Supreme Court has indicated in <u>Rakas v. Illinois</u>, 439 U.S. 128 (1978), that matters of standing in the context of searches and seizures actually involve substantive Fourth Amendment law. Standing is not to be analyzed apart from the merits, rather a defendant is required to prove a legitimate expectation of privacy as a prerequisite to challenge unlawful police conduct. <u>Sanchez</u>, 943 F.2d at 113 n.1.

A defendant has standing to challenge the admissibility of evidence only if his own constitutional rights have been violated. <u>United States v. Padilla</u>, 508 U.S. 77, 81 (1993); <u>United States v. Salvucci</u>, 448 U.S. 83, 86-87 (1980); <u>Rakas v. Illinois</u>, 439 U.S. 128, 134 (1978). In cases involving Fourth Amendment violations, courts determine standing by determining whether defendant had a reasonable expectation of privacy in the area searched or the items seized. The Supreme Court has adopted a two-part test to determine whether a person's expectation of privacy is legitimate: First, the person must exhibit an actual subjective expectation of privacy, and second, society must be prepared to recognize that expectation as objectively reasonable. <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967).

In the present case the evidence is uncontroverted that although the car was titled in Ms. Shelton's mother's name, Ms. Shelton herself purchased the car. It was considered "her" car and she gave defendant permission to use it. Only defendant and Ms. Shelton had keys to the car. The court finds that defendant has standing to challenge the seizure of the gun. He had a subjective expectation of privacy in the car he shared with Ms. Shelton and society would recognize that expectation as reasonable under the circumstances.

## 2. Arrest of Defendant

Law enforcement officers may arrest a person without a warrant if they have probable cause to believe that the person has committed or was committing a crime. Gerstein v. Pugh, 420 U.S. 103 (1975); United States v. Watson, 423 U.S. 411 (1976). Probable cause for arrest exists if at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the person had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). See also R.S.Mo § 544.216 (a municipal law enforcement officer may arrest on view without a warrant any person about whom he has reasonable grounds to believe has violated any law of this state). Here, PO Mayer saw defendant remove a firearm from under his coat where it had previously been fully concealed. This is a violation of Missouri law and therefore defendant's arrest was proper.

## 3. Seizure of the Gun

When police officers are lawfully in a particular location and observe items in plain view which they have probable cause to believe are contraband or evidence of a crime, they may seize such items without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 464-73 (1971); Arizona v. Hicks, 480 U.S. 321, 326 (1987); United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990), cert. denied, 498 U.S. 1068 (1991). There is no requirement that the discovery be inadvertent. Horton v. California, 496 U.S. 128, 136-143, 110 S.Ct. 2301, 2308-11 (1990). Here, after arresting defendant, PO Mayer looked through the car window and saw the barrel of the gun sticking out of the arm rest. The gun was properly seized.

## 4. Seizure of Defendant's Coat

After being arrested, the defendant was conveyed to police headquarters. The police then seized his clothing. Clearly, there was probable cause to arrest the defendant. United States v. Watson, 423 U.S. 411, 417 (1976). The search of defendant's person and the seizure of his clothing were lawful because they were incident to his lawful arrest. Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Robinson, 414 U.S. 218, 235 (1973); New York v. Belton, 453 U.S. 454

(1981). Even though the clothing was mere evidence and had "evidential value only," it was subject to seizure. Warden v. Hayden, 387 U.S. 294 (1967). Therefore, the coat should not be suppressed.

5.  **Defendant's Statements**

At the scene defendant was fully advised of his Miranda Rights by PO Mayer's reading of the rights from the department issued card. At the station he reduced his statement to writing after again being advised of his rights from the department Warning and Waiver form.

A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry" Dickerson v. United States, 530 U.S. 428, 444 (2000). The court must look to the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986).

The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Haynes v. Washington, 373 U.S. 503 (1963); Colorado v. Connelly, 479 U.S. at 170. However, as the Supreme Court stated in Berkemer v. McCarthy, 468 U.S. 420 (1984), "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda are rare." Id. at 433 n. 20; Dickerson, 530 U.S. at 444.

This is not one of the "rare" cases to which Berkemer refers. There is no evidence that defendant's statement at the scene was anything but voluntary. At the station, although Ms. Shelton

testified defendant told her he was pressured by threats of her and her mother's arrest, her hearsay statements are not persuasive. Defendant clearly had a motive to lie and Ms. Shelton's dishonesty concerning the ownership/insurance on her car cuts against her credibility. The fact remains that he initialed each right, signed that no threats or promises had been made to him and made an essentially exculpatory statement in his own hand. This statement was voluntary and should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Evidence and Statements be **DENIED**. [Doc. 16]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this   14th   day of October, 2005.